IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SARUN CHUN,

        Petitioner,                  No. 2:11-cv-1480 MCE EFB P

     vs.

RAUL LOPEZ,

        Respondent.             <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

      Petitioner is a state prisoner with counsel proceeding with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges a 2004 judgment of conviction entered against him in the San Joaquin County Superior Court on charges of second degree murder and street terrorism, with sentence enhancements for possession of a firearm and acting in furtherance of a street gang. He seeks relief on the grounds that: (1) the trial court violated his Fifth Amendment rights in failing to suppress his statements to the police; and (2) the trial court violated his Fourteenth Amendment right to due process in giving a jury instruction on second degree felony murder. Upon careful consideration of the record and the applicable law, the undersigned recommends that petitioner's application for habeas corpus relief be denied.

////

1

1    **I.      Factual and Procedural Background**

2          In a published opinion affirming petitioner's judgment of conviction, the California

3    Supreme Court provided the following factual summary:

4                Judy Onesavanh and Sophal Ouch were planning a party for their
                 son's birthday.  Around 9:00 p.m. on September 13, 2003, they and
5                a friend, Bounthavy Onethavong, were driving to the store in
                 Stockton in a blue Mitsubishi that Onesavanh's father owned.
6                Onesavanh's brother, George, also drives the car.  The police
                 consider George to be highly ranked in the Asian Boys street gang
7                (Asian Boys).

8                That evening Ouch was driving, with Onesavanh in the front
                 passenger seat and Onethavong behind Ouch.  While they were
9                stopped in the left turn lane at a traffic light, a blue Honda with
                 tinted windows pulled up beside them.  When the light changed,
10               gunfire erupted from the Honda, hitting all three occupants of the
                 Mitsubishi.  Onethavong was killed, having received two bullet
11               wounds in the head.  Onesavanh was hit in the back and seriously
                 wounded.  Ouch was shot in the cheek and suffered a fractured
12               jaw.

13               Ouch and Onesavanh identified the Honda's driver as "T–Bird,"
                 known to the police to be Rathana Chan, a member of the Tiny
14               Rascals Gangsters (Tiny Rascals), a criminal street gang.  The
                 Tiny Rascals do not get along with the Asian Boys.  Chan was
15               never found.  The forensic evidence showed that three different
                 guns were used in the shooting, a .22, a .38, and a .44, and at least
16               six bullets were fired.  Both the .38 and the .44 struck Onethavong;
                 both shots were lethal.  Only the .44 was recovered.  It was found
17               at the residence of Sokha and Mao Bun, brothers believed to be
                 members of a gang.
18
                 Two months after the shooting, the police stopped a van while
19               investigating another suspected gang shooting.  Defendant was a
                 passenger in the van.  He was arrested and subsequently made two
20               statements regarding the shooting in this case.  He admitted he was
                 in the backseat of the Honda at the time; T–Bird was the driver and
21               there were two other passengers.  Later, he also admitted he fired a
                 .38–caliber firearm.  He said he did not point the gun at anyone; he
22               just wanted to scare them.

23               Defendant, who was 16 years old at the time of the shooting, was
                 tried as an adult for his role in the shooting.  He was charged with
24               murder, with driveby and gang special circumstances, and with
                 two counts of attempted murder, discharging a firearm from a
25               vehicle, and shooting into an occupied vehicle, all with gang and
                 firearm-use allegations, and with street terrorism.  At trial, the
26               prosecution presented evidence that defendant was a member of

                                          2

1           the Tiny Rascals, and that the shooting was for the benefit of a
2           gang. Defendant testified, denying being a member of the Tiny
            Rascals or being involved in the shooting.

3           The prosecution sought a first degree murder conviction. The
            court also instructed the jury on second degree felony murder
4           based on shooting at an occupied motor vehicle (§ 246) either
            directly or as an aider and abettor. The jury found defendant guilty
5           of second degree murder. It found the personal-firearm-use
            allegation not true, but found that a principal intentionally used a
6           firearm and the shooting was committed for the benefit of a
            criminal street gang. The jury acquitted defendant of both counts
7           of attempted murder, shooting from a motor vehicle, and shooting
            at an occupied motor vehicle. It convicted defendant of being an
8           active participant in a criminal street gang.

9    *People v. Sarun Chun*, 45 Cal.4th 1172, 1178-80 (2009). Petitioner was sentenced to 55 years to

10   life in state prison and ordered to pay $65,091.30 in victim restitution. Dckt. 1 at 5-6.

11          Petitioner appealed his judgment of conviction to the California Court of Appeal.

12   Resp't's Lodg. Doc. 1 (Appellant's Opening Brief). The result of that appeal was summarized

13   by the California Supreme Court as follows:

14          The Court of Appeal, in an opinion authored by Justice Morrison,
            reversed the murder conviction and otherwise affirmed the
15          judgment. It found two errors in the case. It held the trial court
            had properly admitted defendant's first statement that he had been
16          in the car but that the court should have excluded his subsequent
            statement that he had fired a gun. It concluded that the latter
17          statement was procured by a false promise of leniency. It found
            this error harmless beyond a reasonable doubt "as a pure
18          evidentiary matter." But, partly due to this error, the Court of
            Appeal also held the trial court erred in instructing the jury on
19          second degree felony murder. It found this error was prejudicial
            and reversed the murder conviction.
20

21   *People v. Sarun Chun*, 45 Cal.4th at 1180. *See also People v. Chun*, 65 Cal.Rptr.3d 738, 741-42

22   (Cal.App. 3 Dist. 2007) (opinion of the California Court of Appeal on petitioner's direct appeal).

23          After the California Court of Appeal issued its ruling reversing petitioner's second degree

24   murder conviction, respondent filed a petition for review in the California Supreme Court.

25   Resp't's Lodg. Doc. 7 (Petition for Review). That petition was granted. Resp't's Lodg. Doc. 9

26   (Grant of Review). Upon review, the Supreme Court addressed only the issue of whether the

1   trial court erred in instructing the jury on second degree murder and whether that error was

2   prejudicial. *Sarun Chun*, 45 Cal.4th at 1205. The Supreme Court did not address whether the

3   trial court prejudicially erred in admitting petitioner's statement to police that he fired a gun

4   from the Honda. *Id.*

5          The California Supreme Court agreed with the Court of Appeal that the trial court erred

6   in instructing petitioner's jury on second degree felony murder. *Id.* at 1201. Unlike the Court of

7   Appeal, the Supreme Court found that this error was, "by itself, harmless beyond a reasonable

8   doubt." *Id.* at 1205. However, because the Court of Appeal had identified a second error by the

9   trial court; namely, the admission of evidence that petitioner confessed he fired a gun, the

10  Supreme Court remanded the case to the Court of Appeal for a determination of whether these

11  two errors, in combination, were prejudicial. *Id.*

12         On remand, the California Court of Appeal concluded that the cumulative effect of the

13  two errors was not prejudicial. Resp't's Lodg. Doc. 14 (Order After Remand). Accordingly,

14  petitioner's second degree murder conviction was reinstated. *Id.* Petitioner filed a petition for

15  review of this decision, which was summarily denied. Resp't's Lodg. Docs. 15, 16.

16         Petitioner filed his federal habeas petition in this court on May 29, 2011.

17  **II.   Analysis**

18         **A.  Standards for a Writ of Habeas Corpus**

19         An application for a writ of habeas corpus by a person in custody under a judgment of a

20  state court can be granted only for violations of the Constitution or laws of the United States. 28

21  U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or

22  application of state law. *See Wilson v. Corcoran*, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010);

23  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir.

24  2000).

25         Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

26  corpus relief:

4

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the state court decision. *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (*citing Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Nonetheless, "circuit court precedent may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[1] *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that

---

[1] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)).

application must also be unreasonable." *Williams*, 529 U.S. at 412. *See also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S.___,___,131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*,131 S. Ct. at 786-87.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington*, 131 S. Ct. at 784-85. This presumption may be overcome by a showing "there is reason to think some other explanation for

1   the state court's decision is more likely." Id. at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797,

2   803 (1991)).  Where the state court reaches a decision on the merits but provides no reasoning to

3   support its conclusion, a federal habeas court independently reviews the record to determine

4   whether habeas corpus relief is available under § 2254(d).  *Stanley*, 633 F.3d at 860; *Himes v.*

5   *Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo

6   review of the constitutional issue, but rather, the only method by which we can determine

7   whether a silent state court decision is objectively unreasonable."  *Himes*, 336 F.3d at 853.

8   Where no reasoned decision is available, the habeas petitioner still has the burden of "showing

9   there was no reasonable basis for the state court to deny relief."  *Harrington*, 131 S. Ct. at 784.

10       When it is clear, however, that a state court has not reached the merits of a petitioner's

11   claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

12   habeas court must review the claim de novo.  *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462

13   F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook,* 333 F.3d 1052, 1056 (9th Cir. 2003).[2]

14       **B. Petitioner's Claims**

15           **1. Suppression of Petitioner's Statements to Police**

16       Petitioner's first claim for relief is that the trial court erred in denying his motion to

17   suppress his statements to Detectives Seraypheap and Reyes that he was in the Honda and that he

18   fired a .38 revolver.  Dckt. No. 1 at 12.  He contends that the statements were involuntary in that

19   they were elicited by implied threats of harsher treatment and implied promises of leniency, and

20   he argues that the trial court's failure to suppress these statements violated his rights under the

21   Fifth Amendment.  *Id.*  He also argues that the admission of his statements resulted in prejudice

22   because without the statements there was no evidence tying him to the shooting.  *Id.*

23   ////

24

25       [2]  The United States Supreme Court has recently granted certiorari in a case apparently to
     consider this issue.  *See Williams v. Cavazos*, 646 F.3d 626, 639-41 (9th Cir. 2011), *cert. granted*
26   *in part*, ___U.S.___, 132 S. Ct. 1088 (2012).

### a.  Opinion of the California Court of Appeal

The California Court of Appeal issued the last reasoned decision on this claim.  *People v. Chun*, 65 Cal.Rptr.3d 738, 744-51.  That court explained the factual background to the claim as follows:

**Factual Background**

Defendant was detained by the police shortly after midnight on November 9, 2003.  Officer Gutierrez read defendant his *Miranda* rights from a card.  Defendant was interviewed about the Bedlow shooting at 2:40 a.m. and again at 3:30 a.m.  At 5:00 a.m. defendant was transported to the Stewart Eberhardt Building.  From 5:00 a.m. until 3:50 p.m. defendant was left alone; he was given food and water and allowed to use the restroom.  Defendant never complained that his needs were not met.  At no time did defendant ask to speak to an attorney or indicate he wanted to remain silent.  He did not ask to speak with his parents.  A third interview of less than an hour took place at 3:50 p.m.  Defendant was again advised of his Miranda rights.

At 9:20 p.m. Detectives Seraypheap and Reyes interviewed defendant about the Lan Arc shooting.  Defendant's statements in this interview are at issue.  The interview was videotaped and a transcript prepared.  The interview lasted 42 minutes.  The detectives testified defendant had no trouble understanding them and did not appear tired or under the influence of alcohol or drugs.  The trial court watched the tape of the interview before ruling on the motion to suppress.

Seraypheap told defendant they wanted to talk to him about "different stuff" than the earlier interviews and reminded defendant of his *Miranda* rights.  Seraypheap asked if defendant had ever been in trouble.  When defendant admitted he had received six days in work camp for pushing a security guard, the detective replied, "That's not bad."  Seraypheap explained that had [sic] been talking to the other two guys, who had "many, many stories" to tell.

Defendant indicated he was called "Snub" or "Boy."  He was shown pictures and identified T–Bird and Rattanak Kak.  When defendant claimed he did not remember being in the car at the Lan Arc shooting, Seraypheap told him he better remember because he was going to go to prison at 16 for the Bedlow shooting; his friends said he was there.  The detective told defendant he would be charged with the Lan Arc shooting where one died.  He told him to learn from his mistake at 16 because he was not that tough.  "When you go to prison, you ain't gonna be tough 'cause on a soaking wet day you maybe weighing one hundred fifty pounds,

8

that's it.  You get guys that are huge.  Okay?  I'm not trying to scare you or nothing like that.  Just be aware of it, that no matter what you say to me tonight you are going to prison.  You understand that?"

Seraypheap said he did not care about Bedlow because no one died from that yet, but someone died at Lan Arc.  He told defendant he needed to be honest because "this is gonna depend on whether you're gonna go to prison for the rest of your life or just gonna go to prison for a couple of years or couple of months, whatever . . . . But as of now what I have on you is you're gonna go to prison for the longest time if you don't speak out."  Seraypheap said the others were talking.  He asked if defendant was one of the shooters and defendant said no.  He then asked if defendant was sitting in the front or the back and defendant said in the back next to Rattanak.  T–Bird was the driver and Mao the front passenger.

Defendant denied several times that he had a gun.  Seraypheap said he had been told defendant was one of the shooters and told him to show his honesty.  "The thing is that, you know, I gotta write all these things down.  I'm not writing right now, but I will 'cause I've gotta give it to the judge, hey, judge, this kid's—you know, he's 16 years old, he can learn from his mistake, you know, help him out here.  You know what I mean?  You're 16 years old, man.  This is—this is a murder . . . .  This is as serious as it get.  It doesn't get any worse than this.  Alright?"

Defendant continued to deny he had a gun and Seraypheap pressed him to admit it.  Seraypheap told him he knew there were two guns in the car, a bigger gun and a smaller gun.  People told him defendant had the smaller gun.  Seraypheap knew the bigger gun had killed the guy.[3]  As Seraypheap pushed defendant to tell him which gun he had because he knew defendant had a gun, the following exchange occurred:

Seraypheap: "You['ve] never been in trouble before, just for that A—AWP.  That ain't no big deal, man, you're 16 years old, what can they possibly do to you, if your [—] your gun didn't kill those people there?  It's not your gun.  I been trying to tell you that."

Defendant: "Huh."

Seraypheap: "From the very beginning when I saw you I said, hey, I told you to be honest with everything.  Don't—don't try to cover up, don't try to lie or nothing like that because when you [—] when you do things by yourself, yeah, you can lie.  I wouldn't know it. But when you are with other people, you can't lie because they will

---

[3]  At the time of this interview, the police only knew about the .38 and the .44, not the .22.  A .38 bullet was removed from Onethavong's head during the autopsy.

tell the truth.  When they start telling [—] when they throw in your names, that's when they drag you into this thing.  Okay?"

Defendant: "Alright."

Seraypheap: "Thing is don't do that to yourself, man.  Just—just tell the truth.  You are like my kid.  Every time I talk, hey, alright, alright, then you don't want to say nothing.  Thing is, you know, you gotta tell the truth.  I got kids that are older than you are.  I don't want to see my kid in this situation.  I don't want to see you in this situation.  You know?  The thing is that, you know what, it was a mistake and you were young, 16 years old.  Okay? I [—] I can live with that, you know.  But the thing is don't try to cover anything up.  Learn from your mistake.  That's all I'm telling you."

Defendant: "I learn from my mistake."

Seraypheap: " Yeah, you better learn from your mistake 'cause this is a [—] this is a big lesson.  The biggest lesson of your life.  Okay?  I [—] I  [—] like again, like I told you that—I been told you had two—there were two guns inside that car.  Okay?  One of them is your's and other's from the other person.  I won't mention no name 'cause I'm waiting for you to tell me.  I already know it.  You know?  How many rounds did you fire off?''

Defendant admitted he fired one round. Seraypheap asked what kind of gun it was and defendant said a short .38.  He thought he fired two rounds.  Seraypheap left the room shortly after this admission.

Reyes tried to get defendant to tell him what happened; defendant could not remember any street names unless the detective provided them.  Defendant said he did not know the people in the other car.  He was not sure what happened.  Defendant said he did not point at anyone; he just wanted to scare them.  With prompting from Reyes, defendant said the guy in the back of the other car was reaching for something, defendant shot towards him to scare him.  Defendant said he threw the gun into the water by UOP.  Defendant denied he was concerned about retaliation from ABZ.  "No, that day I was stupid, that's why."

The trial court determined there was no *Miranda* issue as defendant was properly Mirandized.  Sleep was not an issue because defendant could have slept in the eight hours he was left alone and he did not appear exhausted.  The key issue was voluntariness, which the court took under submission.  The court denied the motion, finding the People satisfied the burden of proving by a preponderance of the evidence that the police did not cross the line from proper exhortations to tell the truth to impermissible threats of punishment or promises of leniency.  Any implied or express promises were vague and ambiguous.  The

court stated that if the standard was reasonable doubt, it would have a reasonable doubt whether the officer's statements were the cause of the admissions.

A redacted version of the tape was played for the jury.  References to the Bedlow shooting and what defendants' two friends said were redacted.

*Id.* at 744-47.

The California Court of Appeal denied petitioner's Fifth Amendment claim with regard to his statement that he was in the Honda.  However, the court granted petitioner's Fifth Amendment claim with regard to his statement that he fired a gun, finding that it was induced by false promises of leniency and threats.  The court reasoned as follows:

**Discussion**

Defendant contends each of his admissions was induced by a promise of leniency.  Just before he admitted being in the car, Seraypheap told him the Bedlow incident was not serious because no one died, but Lan Arc was serious because it was a murder. Seraypheap told defendant he was going to prison for the Bedlow incident and what he said would determine "whether you're gonna go to prison for the rest of your life or just gonna go to prison for a couple of years or couple of months."  Defendant was "gonna go to prison for the longest time if you don't speak out."  The detective told defendant he would not be tough in prison because there the guys were "huge."

Defendant contends the coercion continued as Seraypheap pressed defendant to admit he had a gun.  In the context of repeatedly telling defendant the situation was serious and he was young and should learn from his mistake, Seraypheap falsely told him the smaller gun was not a murder weapon, he would ask the judge to give defendant a break, and, because defendant was only 16, "what can they possibly do to you, if your—your gun didn't kill these people there?"

The Attorney General contends the admissions were not coerced; any promises of help were vague and nonspecific.  While admitting Seraypheap falsely told defendant that both Mao and Rattanak had identified him as being in the car when only Rattanak had, and that the .38 was not a murder weapon when it was, he dismisses the effect of these deceptions because they would not have produced an unreliable confession.  Defendant had no reason to admit any involvement if he was not there and would not have

11

known the type of guns involved.[4]  "Where the deception is not of a type reasonably likely to procure an untrue statement, a finding of involuntariness is unwarranted. [Citation.]"  (*People v. Farnam* (2002) 28 Cal.4th 107, 182, 121 Cal.Rptr.2d 106, 47 P.3d 988.)  "The courts have prohibited only those psychological ploys which, under all the circumstances, are so coercive that they tend to produce a statement that is both involuntary and unreliable. [Citations.]"  (*People v. Ray* (1996) 13 Cal.4th 313, 340, 52 Cal.Rptr.2d 296, 914 P.2d 846.)  Finally, the Attorney General contends defendant was motivated to admit his involvement not because of threats or promises of leniency, but because he knew his companions were talking and feared they would make his involvement look worse.

"A defendant's admission or confession challenged as involuntary may not be introduced into evidence at trial unless the prosecution proves by a preponderance of the evidence that it was voluntary. [Citations.]  A confession or admission is involuntary, and thus subject to exclusion at trial, only if it is the product of coercive police activity.  [Citations.]  On appeal, we review independently the trial court's determination on the ultimate legal issue of voluntariness.  [Citation.]  But any factual findings by the trial court as to the circumstances surrounding an admission or confession, including '"the characteristics of the accused and the details of the interrogation" [citation],' are subject to review under the deferential substantial evidence standard.  [Citation.] [¶]  In deciding the question of voluntariness, the United States Supreme Court has directed courts to consider 'the totality of circumstances.'  [Citations.]  Relevant are 'the crucial element of police coercion [citation]; the length of the interrogation [citation]; its location [citation]; its continuity' as well as 'the defendant's maturity [citation]; education [citation]; physical condition [citation]; and mental health.' [Citation.]"  (*People v. Williams* (1997) 16 Cal.4th 635, 659–660, 66 Cal.Rptr.2d 573, 941 P.2d 752.)

In arguing his admissions were involuntary, defendant relies on the allegedly coercive statements of Seraypheap, the failure to obtain an express *Miranda* waiver, and his lack of sleep.  Substantial evidence from the testimony of the detectives supports the trial court's finding of proper *Miranda* admonishments and defendant's opportunity for sleep and lack of signs of exhaustion.  Thus, we focus on the content of the interrogation and whether there were implied threats or promises of leniency sufficient to render subsequent admissions involuntary.

"It is well settled that a confession is involuntary and therefore inadmissible if it was elicited by any promise of benefit or leniency

---

[4]  Defendant claimed he heard rumors about the shooting, including that a .38 was used.

whether express or implied. [Citations.]" (*People v. Jimenez* (1978) 21 Cal.3d 595, 611–612, 147 Cal.Rptr. 172, 580 P.2d 672, *overruled on other grounds* in *People v. Cahill* (1993) 5 Cal.4th 478, 510, fn. 17, 20 Cal.Rptr.2d 582, 853 P.2d 1037.) "The line to be drawn between permissible police conduct and conduct deemed to induce or to tend to induce an involuntary statement does not depend upon the bare language of inducement but rather upon the nature of the benefit to be derived by a defendant if he speaks the truth, as represented by the police. Thus, 'advice or exhortation by a police officer to an accused to "tell the truth" or that "it would be better to tell the truth" unaccompanied by either a threat or a promise, does not render a subsequent confession involuntary.' [Citation.]" (*People v. Hill* (1967) 66 Cal.2d 536, 549, 58 Cal.Rptr. 340, 426 P.2d 908.)

"When the benefit pointed out by the police to a suspect is merely that which flows naturally from a truthful and honest course of conduct, we can perceive nothing improper in such police activity. On the other hand, if in addition to the foregoing benefit, or in the place thereof, the defendant is given to understand that he might reasonably expect benefits in the nature of more lenient treatment at the hands of the police, prosecution or court in consideration of making a statement, even a truthful one, such motivation is deemed to render the statement involuntary and inadmissible. The offer or promise of such benefit need not be expressed, but may be implied from equivocal language not otherwise made clear. [Citations.]" (*People v. Hill, supra*, 66 Cal.2d at p. 549, 58 Cal.Rptr. 340, 426 P.2d 908.)

We consider each admission separately in determining whether it was the product of coercion. In assessing whether there were false promises of leniency, this court's decision in *People v. Cahill* (1994) 22 Cal.App.4th 296, 28 Cal.Rptr.2d 1 (*Cahill*) is instructive.[5] In *Cahill*, defendant was convicted of first degree murder with special circumstances that the murder occurred in the course of a burglary, robbery and rape. (*Id.* at p. 300, 28 Cal.Rptr.2d 1.) After defendant was Mirandized, the police told him they had all the physical evidence they needed to place him in the victim's house where the murder occurred. An officer told defendant, "'I'm here really to try to see what I can do for you.'" (*Id.* at p. 305, 28 Cal.Rptr.2d 1.) The officer explained the law of murder in California, describing first degree and second degree murder and voluntary manslaughter, but omitting any reference to felony murder. (*Id.* at p. 306, 28 Cal.Rptr.2d 1.) This court found the description "materially deceptive." (*Id.* at p. 315, 28 Cal.Rptr.2d 1.) The officer told defendant he could help himself by talking and suggested that defendant could avoid a

---

[5] Although defendant relied heavily on *Cahill, supra*, 22 Cal.App.4th 296, 28 Cal.Rptr.2d 1 in his opening brief, the Attorney General did not discuss the case.

first-degree-murder conviction by admitting an unpremeditated role in the killing.  (*Id.* at pp. 306–307, 314–315, 28 Cal.Rptr.2d 1.)  We found defendant's subsequent confession was procured by a false promise of leniency, that he could avoid first degree murder by admitting he was inside the house and the killing was not premeditated.  (*Id.* at p. 314, 28 Cal.Rptr.2d 1.)  Recognizing the case law that deception was permissible unless reasonably likely to procure an untrue statement, we found these cases did not apply where the deception was a false promise of leniency.  (*Id.* at p. 315, 28 Cal.Rptr.2d 1.)

As to the first challenged statement that defendant was in the Honda, we find no coercion.  Seraypheap's discussion of the harsh realities of prison for a slight youth like defendant was simply commenting on the realities of the situation.  (*In re Gomez* (1966) 64 Cal.2d 591, 593–594, 51 Cal.Rptr. 97, 414 P.2d 33 [permissible to "confront petitioner squarely with the predicament he was in"]; *People v. Seaton* (1983) 146 Cal.App.3d 67, 74, 194 Cal.Rptr. 33.)  Telling defendant that what he said would make the difference between life in prison or only a few years or months was not a false promise of leniency.  Unlike in *Cahill*, defendant was not falsely told that one version of events had a significantly lesser consequence.  Not every police suggestion that a lesser consequence is available is coercion.  In *People v. Holloway* (2004) 33 Cal.4th 96, 14 Cal.Rptr.3d 212, 91 P.3d 164, while interrogating defendant about two murders, the police suggested the killings might have been accidental or occurred during a blackout and such circumstances could make a lot of difference.  The Supreme Court found no promises of lenient treatment in exchange for cooperation.  No particular benefit was offered and it is true there are varying degrees of homicide depending on the circumstances.  (*Id.* at p. 116, 14 Cal.Rptr.3d 212, 91 P.3d 164.)

We reach a different conclusion as to defendant's admission he fired a .38.  Just before this admission Seraypheap repeatedly emphasized defendant's young age, the seriousness of the situation, and that he should learn from his mistake.  The detective urged defendant to admit he had the smaller gun, assuring him it was not the murder weapon and asking, "what can they possibly do to you, if your—your gun didn't kill these people there?"  Seraypheap's statements were both factually and legally false.  Both known guns were murder weapons and the law of aiding and abetting does not require one to be the actual shooter to be convicted of murder.  (*See, e.g., People v. Vasco* (2005) 131 Cal.App.4th 137, 160–162, 31 Cal.Rptr.3d 643.)

In addition, Seraypheap told defendant he would write the judge and urge him to "help [defendant] out here."  He compared defendant to his son and reasoned that if defendant was young and made a mistake, "I can live with that," as long as defendant did not cover it up.  We recognize that simply telling a defendant that the

14

police will advise the district attorney of defendant's cooperation is not a promise of leniency.  (*People v. Boyde* (1988) 46 Cal.3d 212, 239, 250 Cal.Rptr. 83, 758 P.2d 25 [officer repeatedly told defendant he had no authority to make a promise of leniency, but could only pass information to the district attorney]; *People v. Ramos* (2004) 121 Cal.App.4th 1194, 1203, 18 Cal.Rptr.3d 167 [officer told defendant he would bring defendant's statements to the district attorney's office for consideration].)  Here, however, Seraypheap did more than offer intercession that might be useful in plea bargain negotiations (*ibid.*); Seraypheap offered to advocate for defendant before the judge.

In effect, Seraypheap falsely promised defendant more lenient treatment in a murder case—a chance to learn from his mistake—if he cooperated and admitted he had the smaller gun.  This promise is similar to, although not as specific as, telling the defendant in *Cahill* he would not face first degree murder if he admitted an unpremeditated killing.

This case has striking similarities to *In re Shawn D.* (1993) 20 Cal.App.4th 200, 216, 24 Cal.Rptr.2d 395, in which the court found "[t]he promise of leniency in exchange for a confession permeated the entire interrogation."  In questioning an unsophisticated 16–year–old about a burglary, the police told the minor the truth would be noted in the police report, as would a lie. The police told him he was putting his pregnant girlfriend in a precarious situation and he needed to admit his mistakes and start a new life.  If the minor stopped lying, he would get to see his girlfriend and baby.  (*Id.* at pp. 204–205, 24 Cal.Rptr.2d 395.) Using a parable of "tough talk," the police compared the minor's situation to dropping a wedding ring in a toilet, and urged him to reach in and get the ring rather than to keep lying.  Explaining the law, the officer posed the hypothetical of the get-away driver in a bank robbery; he would be in trouble for robbing the bank, but if he explained his participation, it could make a difference.  (*Id.* at p. 205, 24 Cal.Rptr.2d 395.)  The officer told the minor if he helped them recover the stolen property, he would personally talk to the district attorney.  (*Id.* at p. 207, 24 Cal.Rptr.2d 395.)

The reviewing court found the officer's lies to the minor, the implied threat in references to San Quentin, and the tough talk of the parable and possible benefit to his girlfriend, troubling but probably insufficient to make the confession involuntary.  (*In re Shawn D., supra*, 20 Cal.App.4th at p. 213, 24 Cal.Rptr.2d 395.)  It found the confession involuntary due to the repeated suggestions that the minor would be treated more leniently if he confessed. The minor was told his honesty or his lies would be noted on the police report and the report would reflect whether he was cooperative.  The officer implied the minor would go to jail if he continued to lie, but would get to see his girlfriend and baby if he stopped lying.  (*Id.* at p. 214, 24 Cal.Rptr.2d 395.)  The

hypothetical about the bank robbery suggested leniency for
explaining his role, and the officer promised to personally speak to
the district attorney if the minor helped them "'get the stuff back.'"
(*Id.* at p. 215, 24 Cal.Rptr.2d 395.)

In *People v. Johnson* (1969) 70 Cal.2d 469, 74 Cal.Rptr. 889, 450
P.2d 265, a shooting occurred at a gas station.  The police told
defendant his companions accused him of the killing, there was a
first-degree-murder conviction for which he could get the gas
chamber, no one would believe him because he denied everything,
if they were [sic] jury they would give him the gas chamber, it
would be better to go into the courtroom in the best light, and
denying everything showed malice and hatred or just a senseless
killing of a white man.  (*Id.* at p. 478, 74 Cal.Rptr. 889, 450 P.2d
265.)  The court found defendant's admission involuntary because
it was motivated by promises of leniency or advantage.  "To
someone unskilled and uncounseled in the law it might have
offered a hope that since no money was taken in the robbery and if,
as he claimed he did not do the shooting, that he might be cleared
of any serious charges."  (*Id.* at p. 479, 74 Cal.Rptr. 889, 450 P.2d
265.)  In this case, to the young and immature defendant,
Seraypheap's paternal and solicitous exhortations to learn from his
mistake and admit he had a gun because he was not the killer
might have "offered hope" to avoid the most serious charges.  As
in *Cahill*, we find "the interrogation in this case was over the line
and amounted to a promise of leniency."  (*Cahill, supra*, 22
Cal.App.4th at p. 316, 28 Cal.Rptr.2d 1.)

The implied promise of leniency must be "a motivating cause of
the confession[.]"  (*People v. Johnson, supra*, 70 Cal.2d 469, 478,
74 Cal.Rptr. 889, 450 P.2d 265.)  "Where the dominant focus of an
interrogation is an implied promise of leniency and a confession
ensues, absent adduction of countervailing evidence, e.g., a
substantial time lapse between the implied promise and the
incriminating statements, the confession must be attributed to that
implied promise.  [Citation.]"  (*Cahill, supra* 22 Cal.App.4th at p.
316, 28 Cal.Rptr.2d 1.)  The Attorney General contends
defendant's admission was motivated by fear of what his
companions would say about his role in the crime, not any promise
of leniency.  Defendant, however, admitted he fired a .38
immediately after Seraypheap pressed him to learn from his
mistake, told him the smaller gun was not the murder weapon, and
questioned how harsh the consequence could be for a 16–year–old
who had not killed anyone.  There was no substantial time lapse or
other countervailing evidence to attribute the confession to
anything other than the implied promise of leniency if defendant
admitted he had the smaller gun.

////

////

16

> The trial court erred in admitting into evidence defendant's second admission that he fired a gun.

*Id.* at 746-51.

The California Court of Appeal found that the trial court's error in admitting petitioner's statement that he fired a gun was "harmless beyond a reasonable doubt as a pure evidentiary matter." *Id.* at 751. The court reasoned:

> The erroneous admission of an involuntary confession is subject to the federal harmless-beyond-a-reasonable-doubt standard of *Chapman v. California* (1967) 386 U.S. 18, 23, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705, 710. (*People v. Cahill, supra*, 5 Cal.4th 478, 509–510, 20 Cal.Rptr.2d 582, 853 P.2d 1037.) In assessing prejudice, we note first that defendant asserts the jury rejected his admission that he fired a gun because it found he did not personally use a firearm and acquitted him of shooting at or from a motor vehicle. Regardless of what the jurors believed as to defendant's second statement, this is not a case where "honest, fair-minded jurors might very well have brought in not-guilty verdicts" as to murder and street terrorism in the absence of defendant's second statement. (*Chapman v. California, supra*, 386 U.S. at p. 26, 87 S.Ct. at p. 829, 17 L.Ed.2d at p. 711.) There was ample, indeed overwhelming, evidence that defendant was a TRG member and that TRG was a violent street gang. Considerable indicia of gang membership was found in his bedroom and he admitted as much by carving "TRG" on his cafeteria tray and door while in custody and threatening a supervisor, claiming "this is TRG." That he was guilty of murder was almost as indisputable. Defendant was one of three or four persons in the car and three guns were used to fire several shots. The driver was identified as Rathana Chan or T–Bird, a known TRG member. The shooting was gang-related and defendant was a member of the gang. He professed solidarity not only with the gang, but with its violent methods: "One to the dome. This is how we do it." The admission of defendant's second statement that he fired a gun was harmless beyond a reasonable doubt as a pure evidentiary matter.

*Id.* at 751.

**b. Applicable Legal Standards**

The Fourteenth Amendment to the United States Constitution demands that confessions be made voluntarily. *See Lego v. Twomey*, 404 U.S. 477, 483-85 (1972). In determining whether a confession is voluntary, "the question is 'whether the defendant's will was overborne

1  at the time he confessed.'" *Haynes v. Washington*, 373 U.S. 503, 513 (1963); *see also*

2  *Amaya-Ruiz v. Stewart*, 121 F.3d 486, 494 (9th Cir. 1997) (the test is "whether . . . the

3  government obtained the statement by physical or psychological coercion or by improper

4  inducement so that the suspect's will was overborne."). "The line of distinction is that at which

5  governing self-direction is lost and compulsion, of whatever nature or however infused, propels

6  or helps to propel the confession." *Collazo v. Estelle*, 940 F.2d 411, 416 (9th Cir. 1991) (en

7  banc) (quoting *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961)); *see also Pollard v Galaza*,

8  290 F.3d 1030, 1033 (9th Cir. 2002) ("Under the Fourteenth Amendment, a confession is

9  involuntary only if the police use coercive means to undermine the suspect's ability to exercise

10 his free will."); *Henry v. Kernan*, 197 F.3d 1021, 1027 (9th Cir. 1999). In the end, a reviewing

11 court must ask: "Is the confession the product of an essentially free and unconstrained choice by

12 its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will

13 has been overborne and his capacity for self-determination critically impaired, the use of his

14 confession offends due process." *Doody v. Ryan*, 649 F.3d 986, 1008 (9th Cir. 2011) (quoting

15 *Schneckloth v. Bustamonte*, 412 U.S. 218, 225–26 (1973)).

16     "There is no 'talismanic definition of 'voluntariness'' that is 'mechanically applicable.'"

17 *Clark v. Murphy*, 331 F.3d 1062, 1072 (9th Cir. 2003), *overruled in part on other grounds* by

18 *Lockyer v. Andrade*, 538 U.S. 63 (2003) (quoting *Schneckloth*, 412 U.S. at 224). Rather,

19 voluntariness is to be determined in light of the totality of the circumstances. *See Miller v.

20 Fenton*, 474 U.S. 104, 112 (1985). This includes consideration of both the characteristics of the

21 petitioner and the details of the interrogation. *Schneckloth*, 412 U.S. at 226 (The court must

22 examine "the factual circumstances surrounding the confession, assess [ ] the psychological

23 impact on the accused, and evaluate [ ] the legal significance of how the accused reacted.").

24 "The factors to be considered include the degree of police coercion; the length, location and

25 continuity of the interrogation; and the defendant's maturity, education, physical condition,

26 mental health, and age." *Brown v. Horell*, 644 F.3d 969, 979 (9th Cir. 2011). *See also United*

18

1   *States v. Haswood*, 350 F.3d 1024, 1027 (9th Cir. 2003) ("Courts . . . often consider the

2   following factors: the youth of the accused, his intelligence, the lack of any advice to the accused

3   of his constitutional rights, the length of detention, the repeated and prolonged nature of the

4   questioning, and the use of physical punishment such as the deprivation of food or sleep.");

5   *Henry*, 197 F.3d at 1026 ("[v]oluntariness depends on such factors as the surrounding

6   circumstances and the combined effect of the entire course of the officers' conduct upon the

7   defendant").  The totality-of-the-circumstances test to determine voluntariness applies "even

8   where interrogation of juveniles is involved," because "[t]he totality approach . . . mandates . . .

9   inquiry into all the circumstances surrounding the interrogation," such as "the juvenile's age,

10  experience, education, background, and intelligence . . . ."  *Fare v. Michael C.*, 442 U.S. 707,

11  725 (1979).

12       "A confession is involuntary if coerced either by physical intimidation or psychological

13  pressure."  *Haswood*, 350 F.3d at 1027; *United States v. Tingle*, 658 F.2d 1332, 1335 (9th Cir.

14  1981) ("subtle psychological coercion suffices . . . at times more effectively 'to overbear a

15  rational intellect and a free will' ").  Officials cannot extract a confession "by any sort of threats

16  or violence, nor . . . by any direct or implied promises, however slight, nor by the exertion of any

17  improper influence."  *Hutto v. Ross*, 429 U.S. 28, 30 (1976) (quoting *Bram v. United States*, 168

18  U.S. 532, 542-43 (1897)).  False promises or threats may render a confession invalid.  *See, e.g.,*

19  *Lynumn v. Illinois*, 372 U.S. 528, 534 (1963) (confession found to be coerced by officers' false

20  statements that state financial aid for defendant's infant children would be cut off, and her

21  children taken from her, if she did not cooperate); *Rogers v. Richmond*, 365 U.S. 534, 541-45

22  (1961) (defendant's confession was coerced when it was obtained in response to a police threat

23  to take defendant's wife into custody); *Spano v. New York*, 360 U.S. 315, 323 (1959) (confession

24  found to be coerced where police instructed a friend of the accused to falsely state that

25  petitioner's telephone call had gotten him into trouble, that his job was in jeopardy and that loss

26  of his job would be disastrous to his three children, his wife and his unborn child).  However,

19

"misrepresentations made by law enforcement in obtaining a statement, while reprehensible, do[] not necessarily constitute coercive conduct." *Pollard*, 290 F.3d at 1034.  Additionally, encouraging a suspect to tell the truth is not coercion. *Amaya-Ruiz*, 121 F.3d at 494.  Nor is it coercive to recite potential penalties or sentences, including the potential penalties for lying to the interviewer. *Haswood*, 350 F.3d at 1029.

Where an involuntary confession is improperly admitted at trial, a reviewing court must apply a harmless error analysis, assessing the error "in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Arizona v. Fulminante*, 499 U.S. 279, 308 (1991).  In the context of habeas review, the standard is whether the error had substantial and injurious effect or influence in determining the jury's verdict. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Beatty v. Stewart*, 303 F.3d 975, 994 (9th Cir. 2002); *Henry*, 197 F.3d at 1029.  The analysis must be conducted with an awareness that "a confession is like no other evidence," and that "a full confession may have a 'profound impact' on the jury." *Fulminante*, 499 U.S. at 296. *See also Henry*, 197 F.3d at 1029-30.

The Ninth Circuit has concluded that under clearly established United States Supreme Court precedent, the combined effect of multiple trial errors may give rise to a due process violation if it renders a trial fundamentally unfair, even where each error considered individually would not require reversal. *Parle v. Runnels*, 505 F.3d 922, 927 (9th. Cir. 2007) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) and *Chambers v. Mississippi*, 410 U.S. 284, 290 (1973)). *See also Hayes v. Ayers*, 632 F.3d 500, 524 (9th Cir. 2011) (if no error of constitutional magnitude occurred at trial, "no cumulative prejudice is possible").  "The fundamental question in determining whether the combined effect of trial errors violated a defendant's due process rights is whether the errors rendered the criminal defense 'far less persuasive,' *Chambers*, 410 U.S. at 294, and thereby had a 'substantial and injurious effect or influence' on the jury's verdict." *Parle*, 505 F.3d at 927 (quoting *Brecht*, 507 U.S. at 637).

////

### c. Analysis

To prevail on his Fifth Amendment claim, petitioner must demonstrate that the decision of the California Court of Appeal was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S.Ct. at 786-87.  Stated in reverse, petitioner is not entitled to relief on his Fifth Amendment claim if "fairminded jurists could disagree" on the correctness of the California Court of Appeal's decision on this claim.  *Id.*  Petitioner has failed to make the required showing.

The California Court of Appeal concluded that petitioner's statement that he was in the Honda was not coerced.  It found that Officer Seraypheap's statements immediately prior to this admission, to the effect that petitioner would not be "tough" in prison because he was small compared to other prisoners, was not coercive because the officer was simply "commenting on the realities of the situation." *People v. Chun*, 65 Cal.Rptr.3d at 749.  The court's conclusion that these statements were not coercive is not unreasonable or utterly lacking in justification. Therefore, it may not be set aside.

The state appellate court further concluded that Seraypheap's statement to petitioner that what he said during the course of the interrogation would make a difference in terms of his sentence did not constitute a false promise of leniency because petitioner "was not falsely told that one version of events had a significantly lesser consequence." *Id.*  This court agrees. Officer Seraypheap did not directly threaten petitioner or promise him any particular sentence if he confessed to the crime.  In fact, Seraypheap specifically told petitioner that "no matter what you say to me tonight you are going to prison." *Id.* at 745.  Simply telling petitioner the obvious fact that what he said during the interrogation could determine the degree of his punishment would not have caused petitioner's will to be overborne.

The Court of Appeal also concluded that there was substantial evidence in the record that petitioner received proper *Miranda* warnings and that he was not deprived of sleep or exhausted

21

1   during the interrogation.  These conclusions are also reasonable.  There is nothing in the record

2   indicating that exhaustion or lack of sleep compelled or contributed to petitioner's confession or

3   that he was confused about his constitutional rights.

4          With regard to petitioner's statement that he fired a gun, the California Court of Appeal

5   determined that the admission of this statement into evidence was harmless because the other

6   evidence of petitioner's guilt was overwhelming.  In *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007),

7   the United States Supreme Court clarified that a federal habeas court must assess the prejudicial

8   impact of constitutional error in a state-court criminal trial under the 'substantial and injurious

9   effect' standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).[6]  Further, [w]hen a

10  state court has found a constitutional error to be harmless beyond a reasonable doubt, a federal

11  court may not grant habeas relief unless the state court's determination is objectively

12  unreasonable." *Towery v. Schriro*  641 F.3d 300, 307 (9th Cir. 2010).  The decision of the

13  California Court of Appeal that the trial court's evidentiary error in admitting petitioner's

14  statement that he fired a gun was harmless is not objectively unreasonable.  In light of all of the

15  evidence introduced at petitioner's trial, the admission of this statement would not have had a

16  substantial and injurious effect on the verdict.[7]

17         For the foregoing reasons, petitioner is not entitled to relief on his claim that the

18  admission into evidence of his statements to police violated his Fifth Amendment rights.

19  ////

20

21  [6] *Brecht* held that on collateral review of a state court criminal judgment under 28 U.S.C.
    § 2254, an error is harmless unless it had "a substantial and injurious effect or influence in

22  determining the jury's verdict."  507 U.S. at 631.

23  [7] The court notes that the instructional error at issue here is not a structural error which
    requires automatic reversal, but is a trial error subject to harmless error analysis.  *See Hedgpeth*

24  *v. Pulido*, 555 U.S. 57 (2008) (instructing a jury on multiple theories of guilt, one of which is
    invalid, is subject to *Brecht* harmless error analysis); *Neder v. United States*, 527 U.S. 1 (1999)

25  (erroneous jury instruction that omits element of offense is subject to harmless-error analysis);
    *Byrd v. Lewis*, 566 F.3d 855, 863-64 (9th Cir. 2009) (harmless error review applies to an

26  instructional error that affects an element of the offense, a permissible evidentiary inference, or a
    potential theory of conviction).

## 2.  Instruction on Second Degree Felony Murder

In his second claim for relief, petitioner challenges the decision of the California Supreme Court that the trial court's error in instructing on second degree felony murder was harmless.  He argues that the decision was unreasonable because "the record in the instant case establishes that the jurors relied on the second degree felony murder instruction in order to arrive at its murder verdict."  Dckt. 1 at 26.

The California Supreme Court concluded that the trial court erred when it instructed the jury on felony murder as a theory of second degree murder.  *Sarun Chun*, 45 Cal.4th at 1201. The court held that when "the underlying felony is assaultive in nature, such as a violation of section 246 or section 246.3, we now conclude that the felony merges with the homicide and cannot be the basis of a felony-murder instruction."  *Id.*  The Supreme Court determined, however, that the jury instruction error was harmless.  The court explained:

> California Constitution, article VI, section 13, prohibits a reviewing court from setting aside a judgment due to trial court error unless it finds the error prejudicial.  Accordingly, we must decide whether the error in instructing on felony murder prejudiced defendant.
>
> Instructional error regarding the elements of the offense requires reversal of the judgment unless the reviewing court concludes beyond a reasonable doubt that the error did not contribute to the verdict.  (*People v. Cross* (2008) 45 Cal.4th 58, 69–71, 82 Cal.Rptr.3d 373, 190 P.3d 706 (conc. opn. of Baxter, J.); *People v. Swain* (1996) 12 Cal.4th 593, 607, 49 Cal.Rptr.2d 390, 909 P.2d 994; *People v. Calderon* (2005) 129 Cal.App.4th 1301, 1306–1307, 29 Cal.Rptr.3d 277 [erroneous instruction on the second degree felony-murder rule]; *see Hedgpeth v. Pulido* (2008) 555 U.S. 57, 129 S.Ct. 530, 172 L.Ed.2d 388 [reiterating that error of this nature is subject to harmless error analysis]; *Neder v. United States* (1999) 527 U.S. 1, 15, 119 S.Ct. 1827, 144 L.Ed.2d 35 [stating the reasonable doubt test].)
>
> In finding prejudice, the Court of Appeal noted that the trial court "did not give CALJIC No. 8.30 on second degree express malice murder or CALJIC No. 8.31 on second degree implied malice murder."  It also stated, "While it is possible the jury selected second degree murder on another theory after finding no premeditation and deliberation, we cannot determine which theory the jury relied on, so if the second degree felony-murder

instruction was legally flawed, the verdict must be reversed. (*People v. Guiton* (1993) 4 Cal.4th 1116, 1129[, 17 Cal.Rptr.2d 365, 847 P.2d 45].)"  Later, after it did find error, the court reiterated that the error was prejudicial: "Since . . . the record does not show the murder conviction was based on a valid ground, we reverse the conviction for second degree murder.  (*People v. Guiton, supra*, 4 Cal.4th 1116, 1129[, 17 Cal.Rptr.2d 365, 847 P.2d 45].)"

Defendant argues that the trial court did not adequately instruct the jury on conscious-disregard-for-life malice as a theory of second degree murder, and therefore the jury could not have based its verdict on that theory.  We disagree.  Although the trial court did not give CALJIC Nos. 8.30 and 8.31, and hence did not instruct on implied (or express) malice murder precisely the way the authors of CALJIC intended, it did give CALJIC No. 8.11, which contains everything necessary to fully instruct the jury on this form of malice as a possible theory of second degree murder.

Specifically, the court instructed the jury that to prove murder, the prosecution had to prove an unlawful killing that "was done with malice aforethought or occurred during the commission or attempted commission of shooting at an occupied motor vehicle . . . ."  (Italics added.)  It also defined malice: "Malice may be either express or implied.  Malice is express when there is manifested an intention unlawfully to kill a human being.

"Malice is implied when:

"1. The killing resulted from an intentional act;

"2. The natural consequences of the act are dangerous to human life; and

"3. The act was deliberately performed with knowledge of the danger to and with conscious disregard for human life.

"When it is shown that a killing resulted from the intentional doing of an act with express or implied malice, no other mental state need be shown to establish the mental state of malice aforethought."

As the Attorney General notes, the only language from CALJIC No. 8.30 or No. 8.31 not included in CALJIC No. 8.11, which the court gave, is the last sentence of CALJIC No. 8.31: "When the killing is the direct result of such an act [an act committed with implied malice], it is not necessary to prove that the defendant intended that the act would result in the death of a human being."  But omission of this sentence, favorable to the prosecution, could neither have prejudiced defendant nor prevented the jury from finding implied malice.

Later, the court instructed the jury that a killing during the commission of shooting at an occupied motor vehicle is second degree murder "when the perpetrator had the specific intent to commit that crime." The trial court did not reiterate at this point the conscious-disregard-for-life theory of second degree murder, but doing so was not necessary to adequately instruct the jury on that theory. The instructions permitted the jury to base a second degree murder verdict on either malice or the felony-murder rule. Accordingly, the court did instruct the jury on conscious-disregard-for-life malice as a possible basis of murder.

Moreover, the prosecutor explained the applicable law to the jury. He explained that murder was an unlawful killing committed with malice or during the commission of a dangerous felony. He discussed what implied malice is and included examples. Defendant correctly notes that the prosecutor did not argue that defendant acted with implied malice. He argued for first degree, not second degree, murder. But the instructions, especially in light of the prosecutor's explanation, permitted the jury to base a second degree murder verdict on a finding of malice separate from the felony-murder rule.

In this situation, to find the error harmless, a reviewing court must conclude, beyond a reasonable doubt, that the jury based its verdict on a legally valid theory, i.e., either express or conscious-disregard-for-life malice. Citing *People v. Guiton*, *supra*, 4 Cal.4th 1116, 17 Cal.Rptr.2d 365, 847 P.2d 45, the Court of Appeal believed it could not do so. But *Guiton* does not dispose of this issue. In his concurring opinion in *People v. Cross, supra*, 45 Cal.4th at page 70, 82 Cal.Rptr.3d 373, 190 P.3d 706, Justice Baxter discussed *Guiton* 's significance in this context: "Although *Guiton* observed that reliance on other portions of the verdict is '[o]ne way' of finding an instructional error harmless (*Guiton*, at p. 1130 [, 17 Cal.Rptr.2d 365, 847 P.2d 45] ), we have never intimated that this was the only way to do so. Indeed, *Guiton* noted that we were not then presented with the situation of a jury having been instructed with a legally adequate and a legally inadequate theory and that we therefore 'need not decide the exact standard of review' in such circumstances – although we acknowledged that '[t]here may be additional ways by which a court can determine that error in [this] situation is harmless. We leave the question to future cases.' (*Id.* at pp. 1130, 1131[, 17 Cal.Rptr.2d 365, 847 P.2d 45].) Because this case only now presents that issue, *Guiton* does not provide a dispositive answer to the question." (*See also People v. Harris* (1994) 9 Cal.4th 407, 419, fn. 7, 37 Cal.Rptr.2d 200, 886 P.2d 1193.)

The Attorney General argues that the actual verdict does show that the jury did not base its murder verdict on the felony-murder rule but necessarily based it on a valid theory. He notes that the jury acquitted defendant of the separately charged underlying crime of

shooting at an occupied vehicle.  A jury that based a murder
verdict solely on felony murder, the Attorney General argues,
would not acquit a defendant of the underlying felony.  Defendant
counters with the argument that the verdict as a whole – finding
defendant guilty of murder but not guilty of either shooting at or
from a motor vehicle – is internally inconsistent.  On these facts, it
is hard to reconcile this verdict.  If defendant did not commit this
murder by firing at or from a vehicle, how did he commit it?
There was no evidence the victims were killed or injured by any
method other than shooting from and at an occupied vehicle.  The
overall verdict had to have been either a compromise or an act of
leniency.

Defendant recognizes that he may not argue that the murder
conviction must be reversed due to this inconsistency.  He may not
argue that the acquittals imply that defendant could not have
committed murder, and therefore the jury found he did not commit
murder.  Instead, courts necessarily tolerate, and give effect to all
parts of, inconsistent verdicts.  (*See generally People v. Palmer*
(2001) 24 Cal.4th 856, 103 Cal.Rptr.2d 13, 15 P.3d 234.)  But,
defendant argues, this being the case, a reviewing court should not
read more than is warranted into one part of an inconsistent
verdict. Defendant posits the possibility that one or more jurors
found him guilty of second degree murder on a felony-murder
theory but then agreed to acquit him of the underlying felony either
out of leniency or as a compromise, or perhaps simply out of
confusion.  In that event, defendant suggests, those jurors may
simply have believed defendant was guilty of murder on the
invalid felony-murder theory without ever considering a valid
theory of malice.

Defendant's argument has some force.  The acquittal of the
underlying felony strongly suggests the jury based its murder
conviction on a valid theory of malice but, under the
circumstances, we do not believe that it alone does so beyond a
reasonable doubt.  But for other reasons we find the error harmless.
In his concurring opinion in *California v. Roy* (1996) 519 U.S. 2,
117 S.Ct. 337, 136 L.Ed.2d 266, Justice Scalia stated a test that fits
the error of this case well.  In *Roy*, the error was permitting a
defendant to be convicted of a crime as an aider and abettor solely
due to the defendant's knowledge of the perpetrator's intent without
requiring a finding the aider and abettor shared that intent.  That
error is similar to the error of this case, which permitted defendant
to be convicted of murder on a felony-murder theory without
requiring a finding of a valid theory of malice.  The high court held
that the error was subject to harmless error analysis and remanded
for the lower court to engage in that analysis.

*California v. Roy, supra*, 519 U.S. 2, 117 S.Ct. 337, 136 L.Ed.2d
266, involved collateral review of a state court judgment in a
federal habeas corpus matter, a procedural posture in which the

standard of review for prejudice is more deferential than the harmless-beyond-a-reasonable-doubt standard applicable to direct review. (*Id.* at pp. 4–5, 117 S.Ct. 337.) But Justice Scalia, in a concurring opinion, stated a test that is adaptable to the reasonable doubt standard of direct review: "The error in the present case can be harmless only if the jury verdict on other points effectively embraces this one or if it is impossible, upon the evidence, to have found what the verdict did find without finding this point as well." ( Id. at p. 7, 117 S.Ct. 337.) Without holding that this is the only way to find error harmless, we think this test works well here, and we will use it. If other aspects of the verdict or the evidence leave no reasonable doubt that the jury made the findings necessary for conscious-disregard-for-life malice, the erroneous felony-murder instruction was harmless.

For felony murder, the court's instructions required the jury to find that defendant had the specific intent to commit the underlying felony of shooting at an occupied vehicle. Later, it instructed that to find defendant committed that crime, the jury had to find these elements:

"1. A person discharged a firearm at an occupied motor vehicle; and

"2. The discharge of the firearm was willful and malicious."

Thus any juror who relied on the felony-murder rule necessarily found that defendant willfully shot at an occupied vehicle. The undisputed evidence showed that the vehicle shot at was occupied by not one but three persons. The three were hit by multiple gunshots fired at close range from three different firearms. No juror could have found that defendant participated in this shooting, either as a shooter or as an aider and abettor, without also finding that defendant committed an act that is dangerous to life and did so knowing of the danger and with conscious disregard for life – which is a valid theory of malice. In other words, on this evidence, no juror could find felony murder without also finding conscious-disregard-for-life malice. The error in instructing the jury on felony murder was, by itself, harmless beyond a reasonable doubt.

*Id.* at 1201.

On remand from the California Supreme Court, the California Court of Appeal determined that the trial court's jury instruction error was harmless even when considered in conjunction with its error in admitting evidence of petitioner's statement to police that he fired a gun from the Honda. *People v. Sarun Chun*, 2009 WL 4376808 at **6-7. In other words, the

1    court concluded that the cumulative effect of these two errors was not prejudicial.  *Id.*  The court

2    reasoned as follows:

3           **There Was No Cumulative Error**

4           "Under the 'cumulative error' doctrine, errors that are individually
            harmless may nevertheless have a cumulative effect that is
5           prejudicial. [Citations.]"  (*In re Avena* (1996) 12 Cal.4th 694, 772,
            fn. 32 (dis. opn. of Mosk, J.).)  The litmus test for cumulative error
6           is whether defendant received due process and a fair trial.  (*People
            v. Cuccia* (2002) 97 Cal.App.4th 785, 795.)  Because the errors
7           were of constitutional magnitude, we assess the cumulative effect
            under *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705]
8           and the People have the burden to prove beyond a reasonable
            doubt that the error did not contribute to the verdict.  (*People v.
9           Woods* (2006) 146 Cal.App.4th 106, 117.)

10          In his opening supplemental brief, defendant contends the evidence
            permitted the jury to find that he fired the .22, which did not fire a
11          fatal shot.  He contends his laconic statement to the police about
            the shooting showed he did not care whether he killed anyone.
12          Defendant asserts his description of the offense, coupled with
            "harmlessly" firing the .22, was consistent with gross recklessness
13          and insufficient for implied malice.  Therefore, he concludes, the
            jury could have convicted him under the improper felony-murder
14          theory without finding he acted with malice.

15          This argument fails because the Supreme Court has already
            rejected it.  The court found, "No juror could have found that
16          defendant participated in this shooting, either as a shooter or as an
            aider and abettor, without also finding that defendant committed an
17          act that is dangerous to life and did so knowing of the danger and
            with conscious disregard for life-which is a valid theory of
18          malice." (*Chun, supra*, 45 Cal.4th at p. 1205.)

19          In his reply supplemental brief, defendant argues the Supreme
            Court made this statement only in the context of instructional
20          error, not evidentiary error, and thus did not consider whether the
            admissible evidence was sufficient for implied malice murder.  We
21          disagree this statement was made without regard to the state of
            evidence.  Immediately before this statement, the Supreme Court
22          summarized the pertinent evidence.  The Mitsubishi contained
            three people; they were hit by multiple gunshots fired at close
23          range by three different firearms.  (*Chun, supra*, 45 Cal.4th at p.
            1205.)  The Supreme Court's decision in *Chun* finds shooting at an
24          occupied car at close range is implied malice and forecloses
            defendant's argument.

25

26          Defendant's reply brief raises a second argument.  He argues that
            the jury could have found he did not fire a gun.  According to

                                            28

1   defendant, there were four people in the Honda and only three
2   guns.  Defendant posits the jury could have used his statement that
    he fired the .38, not as proof he fired a gun, but as evidence that he
    aided and abetted the shooting.  After all, defendant reasons, the
3   jury found the personal use allegation not true and acquitted
    defendant of shooting from or at a motor vehicle.  Thus, admission
4   of defendant's statement he fired a gun was prejudicial.

5   This argument is connected with defendant's contention that we
    must reconsider our earlier decision that admitting defendant's
6   statement he fired a gun was not prejudicial.  He contends that
    without his statement he fired a gun there is no evidence he aided
7   and abetted the killing.  We disagree and, as explained below,
    decline to reconsider our earlier conclusion on this point.  Even
8   without defendant's admission that he fired a gun, the jury heard
    strong evidence that defendant participated, at least as an aider and
9   abettor, in a gang shooting that resulted in murder.  There was
    ample evidence he participated in the killing as a member of the
10  TRG criminal street gang and that he acted with implied malice.

11  The errors in admission of defendant's statement he fired a gun and
    the instructions on a legally erroneous theory of second degree
12  murder did not change the overwhelming nature of the
    prosecution's case.  This is not a case where, absent these errors,
13  "honest, fair-minded jurors might very well have brought in
    not-guilty verdicts."  (*Chapman v. California, supra*, 386 U.S. 18,
14  26 [17 L.Ed.2d 705, 711].)  We find the cumulative effect of the
    errors to be harmless beyond a reasonable doubt.  (*Id.* at p. 23 [17
15  L.Ed.2d at p. 710].)

16  *Id.* at **6-7.

17      Petitioner has failed to demonstrate that the decisions of the California Supreme Court

18  and the California Court of Appeal that the trial court's jury instruction error was harmless is

19  contrary to or an unreasonable application of federal law.  As explained by the California

20  Supreme Court, petitioner's jury was adequately instructed on a valid theory of second degree

21  murder, and the verdict demonstrated that the jury must have found petitioner guilty under that

22  valid theory.  *See Sarun Chun*, 45 Cal.4th at 1201 ("no juror could find felony murder without

23  also finding conscious-disregard-for-life malice.").  And as explained by the California Court of

24  Appeal, even without petitioner's statement that he fired a gun "there was ample evidence he

25  participated in the killing as a member of the TRG criminal street gang and that he acted with

26  implied malice."  *People v. Sarun Chun*, 2009 WL 4376808 at *7.  For the reasons set forth in

these two opinions, the trial court's error in instructing the jury on second degree murder did not

render the defense case "far less persuasive," *Chambers*, 410 U.S. at 295, or have a "substantial

and injurious effect or influence" on the jury verdict in this case.  *Brecht*, 507 U.S. 631.

Accordingly, petitioner is not entitled to relief on his jury instruction claim.

**III.  Conclusion**

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

within the specified time may waive the right to appeal the District Court's order.  *Turner v.*

*Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In

his objections petitioner may address whether a certificate of appealability should issue in the

event he files an appeal of the judgment in this case.  *See* Rule 11, Federal Rules Governing

Section 2254 Cases (the district court must issue or deny a certificate of appealability when it

enters a final order adverse to the applicant).

DATED:  March 29, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

30